UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**YOUNCHONG WOJCIECHOWSKI,**

       **Plaintiff,**       Case No. 05-73231
vs.                                    HONORABLE DENISE PAGE HOOD

**WILLIAM BEAUMONT HOSPITAL,**

       **Defendant.**
_____/

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**I.  INTRODUCTION**

This matter is before the Court on Defendant's Motion for Summary Judgment, filed on September 14, 2006.  Plaintiff filed a Response in Opposition on October 10, 2006.  Oral argument took place on November 8, 2006.

**II.  STATEMENT OF FACTS**

On August 22, 2005, Plaintiff, Younchong Wojciechowski, filed the instant action against Defendant, William Beaumont Hospital, alleging that Defendant violated the Americans with Disabilities Act, 42 U.S.C. §12101 *et seq*., by discriminating against Plaintiff due to her disability by its failure to provide her with a reasonable accommodation, and ultimately terminating her employment.

Plaintiff began her employment with Defendant in September 1990 as a part-time Nursing Assistant, working in Defendant's Mother-Baby Care Unit. (Pl.'s Compl., Ltr. of Rosemary Woolley).  In 1992, Plaintiff was transferred to a part-time Unit Secretary position in the same unit. (*Id.*).  On January 15, 1999, Plaintiff accidentally punctured her left thumb with a contaminated

1

safety pin. (Pl.'s Compl, Ltr. of Younchong Wojciechowski, p. 1; Pl.'s Br. in Opp'n). Plaintiff was referred to Defendant's Emergency Center and was given a tetanus shot in her left arm. (*Id.*). When Plaintiff returned to her unit, she noticed she was bleeding profusely, as well as experiencing pain in her left arm, which was sore and hot to the touch. (Pl.'s Compl, Ltr. of Younchong Wojciechowski, p. 1). On January 16, 1999, Plaintiff returned to the Emergency Center where it was determined that Plaintiff had an infection in her left thumb and that a 5.5" x 6.6" blood clot had developed in her left arm, at the site of the tetanus shot injection. (Pl.'s Compl, Ltr. of Younchong Wojciechowski, p. 1). Due to the persistent pain in Plaintiff's left arm, she was placed on workers compensation leave of absence in February 1999. In December 1999, Plaintiff returned to work with a one-handed and reduced work schedule restriction. (Pl.'s Compl., Ltr. of Rosemary Woolley). Plaintiff was unable to work her scheduled hours due to the constant pain in her left arm, and she again was placed on workers compensation leave of absence in April 2000. (Pl.'s Compl., Ltr. of Rosemary Woolley). In December 2003, Plaintiff attempted to return to work. (Pl.'s Compl., Ltr. of Rosemary Woolley). She presented Defendant with a form by her treating physician, Dr. Matthew Kulick, which stated that she was restricted to performing only right-handed work. (Pl.'s Compl., Ltr. of Younchong Wojciechowski). Defendant sent Plaintiff for an independent medical evaluation. (Pl.'s Compl., Ltr. of Rosemary Woolley). The independent medical examiner, Dr. Lucius Tripp, determined that Plaintiff was not disabled and could return to work without restrictions. (Pl.'s Compl., Ltr. of Rosemary Woolley). Due to Plaintiff's leave of absence, her position with Defendant had been filled. (Pl.'s Compl., Ltr. of Rosemary Woolley). Pursuant to Defendant's interdepartmental transfer policy, Plaintiff was informed that she would be given a 60-day leave of absence in which she was to find an alternate vacant position with Defendant. (Def.'s Mot. for

Summ. J., Ex. 6). Plaintiff applied for twelve positions with Defendant.[1]  Plaintiff was not hired for any of these positions within the 60-day layoff period, and Defendant terminated her employment on October 11, 2004. On March 3, 2005, Plaintiff filed charges against Defendant with the Equal Employment Opportunity Office.  On May 18, 2005, the EEOC dismissed Plaintiff's charges stating that it could not conclude based on the evidence provided by Plaintiff that Plaintiff's disability was a motivating factor behind Defendant's actions towards Plaintiff.  (Def.'s Mot. for Summ. J., Ex. 18).

### III.   APPLICABLE LAW & ANALYSIS

#### A.  Standard of Review

Under Fed. R. Civ. P. 56, summary judgment is to be entered if the moving party demonstrates there is no genuine issue as to any material fact.  The Supreme Court has interpreted this to mean that summary judgment should be entered if the evidence is such that a reasonable jury could find only for the moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The moving party has "the burden of showing the absence of a genuine issue as to any material fact." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *see also Lenz v. Erdmann Corp.*, 773 F.2d 62 (6th Cir. 1985).  In resolving a summary judgment motion, the Court must view the evidence in the light most favorable to the non-moving party.  *See Duchon v. Cajon Co.*, 791 F.2d 43, 46 (6th Cir. 1986); *Bouldis v. United States Suzuki Motor Corp.*, 711 F.2d 1319 (6th Cir. 1983).  But as the Supreme Court wrote in *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986):

> [T]he plain language of Rule 56(c) mandates the entry to summary
> judgment, after adequate time for discovery and upon motion, against
> a party who fails to make a showing sufficient to establish the

---

[1] Plaintiff withdrew her application for two of the positions, and Defendant withdrew one job posting.  As such, Plaintiff was considered for nine positions.

> existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

To create a genuine issue of material fact, the nonmovant must do more than present "some evidence" of a disputed fact. "If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted). Accordingly, a nonmovant "must produce evidence that would be sufficient to require submission to the jury of the dispute over the fact." *Mathieu v. Chun*, 828 F. Supp. 495, 497 (E.D. Mich. 1993) (citations omitted).

### B.  Defendant's Motion for Summary Judgment

The Americans with Disabilities Act prohibits employers from discriminating "against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). A plaintiff claiming disability discrimination under the ADA may establish such discrimination by direct evidence that the employer relied on the plaintiff's disability when making the employment decision. *Merrill v. Burke E. Porter Machinery Co.*, 159 Fed.Appx. 676, 678 (6th Cir. 2005)(unpublished opinion), *citing Monette v. Electronic Data Systems Corp.*, 90 F.3d 1173, 1178 (6th Cir. 1996). Where the plaintiff cannot introduce direct evidence of discrimination, the plaintiff must establish a prima facie case of discrimination. *Id.* Once a plaintiff establishes a prima facie case, the burden is shifted to the employer to provide a legitimate, nondiscriminatory reason for the

action. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-803 (1973); *Sullivan v. River Valley School District*, 197 F.3d 804, 810 (6th Cir. 1999). If a reason is articulated, the plaintiff must then show that the proffered reason is a pretext for discrimination. *Id.*

A plaintiff establishes a prima facie case of disability discrimination by showing that: (1) she is a disabled person within the meaning of the ADA; (2) she is otherwise qualified to perform the essential function of her job, with or without reasonable accommodation; and (3) she has suffered an adverse employment decision as a result of the disability. *Sullivan*, 197 at 810. "Proof of a disability is a threshold requirement to prove a violation of the ADA." *Gerton v. Verizon South Inc.*, 145 Fed.Appx. 159, 164 (6th Cir. 2005). Under the ADA, the determination of whether a plaintiff has a disability or not is an individualized inquiry. *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 483 (1999). Disability under the ADA is defined as:

> The term "disability" means, with respect to an individual –
>
> **(A)** a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
>
> **(B)** a record of such an impairment; or
>
> **(C)** being regarded as having such an impairment.

Defendant argues that Plaintiff was not disabled when she attempted to return to work in December 2003, evidenced by the independent medical examiner's evaluation and determination that Plaintiff could return to work without restrictions. To establish she suffers from a disability, Plaintiff must demonstrate that her arm pain and RSD[2] substantially limit a major life activity. *See Toyota*

---

[2] Plaintiff asserts that she suffers from Reflex Sympathetic Dystrophy Syndrome, which "is a chronic neurological disease . . . .RSD is a malfunction of part of the nervous system and the immune system as they respond to tissue damage from trauma, such as an accidental injury or medical procedure. Even a minor injury, such as a sprain or deep bruise, might trigger . . . RSD

*Motor Mfg., Ky. v. Williams*, 534 U.S. 184, 196 , 122 S. Ct. 681, 151 L. Ed. 2d 615 (2002). Substantially limits means the individual is either,

1. unable to perform a major life activity that the average person in the general population can perform; or
2. significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner or duration under which the average in the general population can perform that same major life activity.

*Id.* Major life activities include "those activities that are of central importance to daily life . . . .such . . . as . . . walking, seeing, and hearing . . . ." *Id.* at 198. The Supreme Court has not explicitly held that working is a major life activity for purposes of the ADA. It has stated that when the major life activity is working, the plaintiff must demonstrate that her disability substantially limits her ability to perform "a broad range of jobs." *Sutton v. United Air Lines*, 527 U.S. 471, 491, 119 S. Ct. 2139, 144 L. Ed. 2d 450 (1999). The following factors should be used in determining whether Plaintiff's arm and RSD pain substantially limit a major life activity: 1) the nature and severity of the impairment, 2) the duration or expected duration of the impairment, and 3) the permanent or long-term impact, or the expected permanent or long-term impact of or resulting from the impairment. *Id.*(citing 29 C.F.R. §§ 1630.(j)(2)(i)-(iii)).

Plaintiff does not specifically state which major life activity is substantially limited by her disability, the Court will construe Plaintiff's argument as asserting that she is limited in the major life activity of working. Courts are required to construe *pro se* litigants' pleadings liberally, and apply a less stringent standard in determining whether a *pro se* plaintiff has stated sufficient facts to support

---

causing nerves to misfire, sending constant pain signals to the brain." *See* MedlinePlus, at http://www.rsds.org/pdf/recognizing_understanding_treatingCRPS_RSD.pdf.

a claim upon which relief can be granted. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972), *Jourdan v. Jabe*, 951 F. 2d 108, 110 (6th Cir. 1991).   Plaintiff argues that her RSD[3] pain permeates throughout the left-side of her body, affecting the left-side of her face, jaw, neck and torso and left shoulder. (Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J.).  She also states that her RSD pain has negatively impacted her blood pressure, which is uncontrollably high, as well as her ability to speak.  (Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J.). At her deposition, Plaintiff testified in regard to her ability to perform certain jobs. Specifically, Plaintiff stated that she cannot sit at a desk for extended periods of time, estimating she could remain seated for no longer than a twenty minute period.  (Def.'s Mot. for Summ. J., Ex. 1, Dep. Tr. of Younchong Wojciechowski, p. 27). Plaintiff also stated that she could only perform a job that was in a slow-paced environment.  (*Id.* at 29). Lastly, in regard to Plaintiff's ability to work, she stated that she is only able to perform jobs that require the use of one hand. (*Id*. at 37, 44).  As such, Plaintiff is unable to perform any type of job that requires typing.  (*Id.* at 27).

The Court finds that there is a genuine issue of material fact as to whether Plaintiff is disabled. Based upon Plaintiff's deposition testimony, that her RSD and arm pain require her to perform jobs that only require the use of one-hand, that she cannot perform jobs that require typing, or sitting for periods longer than twenty minutes, and that her pain medication is so strong that she is "basically knocked out," Plaintiff has presented sufficient evidence to create a genuine issue of material fact as to whether  she is substantially limited in her ability to perform a broad range of jobs.

Defendant next argues that even if Plaintiff is disabled, she cannot state a prima facie ADA discrimination claim because she is not a qualified individual under the Act.  Only "qualified

---

[3] Plaintiff has not provided the Court with any medical documentation supporting this diagnosis.

individuals with a disability" are protected from employment discrimination based upon a disability. 42 U.S.C. § 12112(a). Defendant argues that Plaintiff cannot bear her burden of establishing that she is "a person who with or without reasonable accommodation, can perform the essential functions of her job." *Williams v. London Util. Comm'n*, 375 F. 3d 424 (6th Cir. 2004). In order for Plaintiff to demonstrate that she is a qualified individual with a disability, she must show that she 1) "satisfies the prerequisites for the position, . . . such as possessing the appropriate educational background, employment experience, and skills, and 2) that [s]he can perform the essential functions of the position held or desired . . . ." *Hedrick v. W. Reserve Care Sys.*, 355 F. 3d 444, 456 (6th Cir. 2004). Defendant asserts that Plaintiff has not demonstrated she could have performed, with or without reasonable accommodation, the essential job functions of the nine positions Plaintiff applied for. The Court agrees.

During the 60-day leave of absence, Plaintiff applied for the following positions: 1) Officer Manager Outreach; 2) Patient Representative; 3) Director of Diversity; 4) Provider Relations Coordinator; 5) Billing and Accounts Receivable Manager; 6) Entrance Attendant; 7) Registrar Admitting; 8) Retail Services Buyer; and 9) Operations Manager/Environmental Services. Six of the nine positions required educational degrees.[4] Plaintiff did not present evidence in her response

---

[4] These include: 1) Patient Representative; Bachelor's degree (Def.'s Mot. for Summ. J.,Ex. 10), 2) Director of Diversity, Bachelor's degree in Human Resources (*Id.*, Ex. 10), 3) Provider Relations Coordinator; Bachelor's degree in Marketing (*Id.*, Ex. 12), 4) Billing and Accounts Receivable Manager; Bachelor's degree (*Id.*, Ex. 13), 5) 5) Retail Services Buyer, Associate degree in Business Administration or related field required (*Id.*, Ex. 16), 6) Operations Manager; Bachelor's Degree and 3 years progressive management achievement or Associates Degree and 5 years of progressive management achievement. (*Id.*, Ex. 17).

Although there were vacant Unit Secretary positions, Plaintiff did not apply to any of these openings because she did not believe she could perform the requirements of the job with the use of one arm only. (Def.'s Mot. for Summ. J., Ex. 1, Dep. Tr. of Younchong Wojciechowski, p. 81).

that she possessed any of the required degrees. On the basis of Plaintiff's response, Plaintiff does not appear to possess the experience required for eight of the nine positions.[5] At oral argument Plaintiff asserted she possessed certain education degrees including a degree in Business Administration. Plaintiff also asserted she had certain business and supervisory experience running a family business for a number of years. As was stated above, none of this was presented in Plaintiff's written response nor did Plaintiff present any documentary evidence of these qualifications at oral argument. Plaintiff has not demonstrated, except by her self-serving statements, that she meets the first prong of the test for establishing that she is a qualified individual with a disability, as Plaintiff has not established she possesses the prerequisites for each of the nine positions.[6] Plaintiff

---

[5] Plaintiff needed the skills and/or related experience for the following positions:

> 1) Office Manager Outreach: Plaintiff needed knowledge of physician office practice operations, including scheduling, billing, medical records, and skills relevant to word processing, spreadsheet and billing operations. (Def.'s Mot. for Summ. J.,Ex. 9).
> 2) Patient Representative: Plaintiff needed social work or communications background. (*Id.*, Ex. 10).
> 3) Director of Diversity: Plaintiff needed seven to ten years of related experience. (*Id.*, Ex. 11).
> 4) Provider Relations Coordinator: Plaintiff needed provider relations network experience. (Id., Ex. 12).
> 5) Billing and Accounts Receivable Manager: Plaintiff needed previous Home Care, Hospice or DME/I-IME, along with extensive knowledge and proficiency with various multiple billing rules and regulations and collection practices. Plaintiff was also required to be competent in Microsoft applications.
> 6) Entrance Attendant: Plaintiff needed proven public relations skills.
> 7) Registrar Admitting: Plaintiff needed to be able to type 30 wpm, and previous registration, billing ICD-9 coding experience.
> 8) Retail Services Buyer: Plaintiff needed computer skills.

[6] The Court also notes that some of the jobs required typing and or labor requiring the use of both arms.

has not demonstrated that she is a qualified individual with a disability and as such she is ineligible for the protection of the ADA.

Lastly, Defendants argue that even if Plaintiff is a qualified individual with a disability, summary judgment is nonetheless appropriate because Plaintiff failed to request an objectively reasonable accommodation. It is Plaintiff's burden to demonstrate that she requested an objectively reasonable accommodation. *Hedrick*, 355 F. 3d at 457. Once Plaintiff establishes she made a request for an objectively reasonable accommodation, Defendant bears the burden of demonstrating that such an accommodation would create an undue hardship. *Id.* A reasonable accommodation includes reassignment to a vacant position, with the caveat that "an employer need not reassign a disabled employee to a position for which he is not qualified, nor is the employer required to waive legitimate, non-discriminatory employment policies . . . ." *Id.* Employers are not required to "offer an employee a promotion as a reasonable accommodation." *Id.* With this in mind, it is a question of fact whether Plaintiff's proposed reassignments were not objectively reasonable, as it does not appear that she was qualified for any of the positions.[7] Plaintiff testified at her deposition that a reasonable accommodation would have been Defendant arranging for her to work only afternoon or midnight shifts, or to place her in a slower paced unit such as the nursery. (Def.'s Mot. for Summ. J., Ex. 1, Dep. Tr. of Younchong Wojciechowski, p. 81-82). It is not clear to the Court whether Plaintiff actually requested the accommodations that Plaintiff proposed during her deposition. Plaintiff also argues that Defendant failed to provide her a reasonable accommodation by not helping her locate the vacant positions for which she was qualified and that were within her restrictions. "[A]n

employer should normally advise an employee of available accommodations once the employee informs the employer that an accommodation is needed, it is equally true that an employer has no duty to reiterate self-evident options to an employee when she is clearly aware of them." *Hankins v. Gap, Inc.*, 84 F. 3d 797, 804 (6th Cir. 1996). Defendant argues that Plaintiff was aware of how to locate available job openings on Defendant's computer system because Defendant's Human Resources staff demonstrated to Plaintiff how to use the system. Additionally, Plaintiff testified that she knew how to locate and apply for job openings. (Def.'s Mot. for Summ. J., Ex. 1, Dep. Tr. of Younchong Wojciechowski, p. 80). However, *Hankins* is distinguishable from the instant matter. The *Hankins* plaintiff argued that she was unaware of available accommodations. *Hankins*, 84 F. 3d at 802. The Court disagreed, finding that the defendant's available accommodations were apparent to the plaintiff as she admitted knowledge of unpaid and paid medical leave, voluntary time off, personal days, as well as the available resource of the company's medical center. *Id.* In the present matter, although Plaintiff could determine which jobs she was qualified for, she did not possess the knowledge of the positions that could accommodate her specific restrictions. This kind of information is not "self-evident." Plaintiff could not know what each unit of Defendant's hospital was like, whether it was fast or slow paced, whether she could perform the requirements with one-hand or if Defendant could accommodate her in such a manner so that she could perform the requirements of the position. Plaintiff requested assistance in determining which positions she could apply for by way of letter to Defendant's CEO, Ted Wasson. (Pl.'s Compl., Pl.'s Ltr. to Ted Wasson). Mr. Wasson replied to Plaintiff's request by informing her that her letter had been forwarded to Defendant's Vice-President of Human Resources, Ronald P. Lilek. (Pl.'s Compl., Ted Wasson Ltr.). Plaintiff testified that one of Defendant's employees demonstrated how to use the computer and locate available positions, but it does not appear that Plaintiff was provided any further assistance.

As such, Plaintiff has presented sufficient evidence to create a genuine issue of material fact as to whether Defendant failed to provide Plaintiff with the reasonable accommodation of assisting her with locating a position for which she was not only qualified, but also could perform within her job restrictions.

Notwithstanding the fact that Plaintiff has demonstrated sufficient evidence to create a genuine issue of material fact as to whether she is disabled and whether she requested an objectively reasonable accommodation, Plaintiff's cause of action must be dismissed as Plaintiff cannot demonstrate she is a qualified individual under the ADA.

### IV. CONCLUSION

Accordingly,

For the reasons stated above, IT IS ORDERED that Defendant's Motion for Summary Judgment **[Docket No. 14, filed September 14, 2006]** is GRANTED.

/s/ Denise Page Hood
DENISE PAGE HOOD
United States District Judge

Dated: December 1, 2006

I hereby certify that a copy of the foregoing document was served upon Regan S. Dable, Esq. and Youchong Wojciechowski, 12484 Rattalee, Davisburg, MI 48350 on December 1, 2006, by electronic and/or ordinary mail.

s/William F. Lewis
Case Manager